UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

S.O., INDIVIDUALLY AND ON BEHALF
OF HER MINOR SON, B.O.                                                                PLAINTIFFS

V.                                                           CIVIL ACTION NO. 3:17-CV-383-DPJ-KFB

HINDS COUNTY SCHOOL DISTRICT, ET AL.                                      DEFENDANTS

ORDER

Defendants Tommy Brumfield, Ben Lundy, Shannon Rankin, and Michelle Ray (the "District Defendants"), and Byram Police Department and Ricardo Montez Kincaid (the "Byram Defendants") have filed motions to dismiss based on qualified immunity [57, 59]. For the reasons that follow, the Court denies the District Defendants' motion [57] as to Brumfield and Ray in their individual capacities regarding the Fourth Amendment claim but otherwise grants the Defendants' motions [57, 59].

I.      Background

Plaintiff S.O., individually and on behalf of her child B.O., is suing Defendants due to alleged conduct that occurred during a school disciplinary action. At the time of the incident, B.O. was a 12-year-old seventh-grade student at Byram Middle School. S.O. says that, on April 4, 2017, Defendant Shannon Rankin, a social-studies teacher, accused B.O. of violating school policy by selling bite-sized candy bars during class. She therefore directed B.O. to go to Assistant Principal Tommy Brumfield's office. *See* Am. Compl. [3] at 4–8. On his way to the office, B.O. encountered Defendant Michelle Ray, another assistant principal. B.O. admitted to Ray that he had hidden some candy in a trashcan while on his way to Brumfield's office. Following this encounter, B.O. says Ray forced him to don rubber gloves and dig the candy out of the trashcan.

In Brumfield's office, Brumfield searched B.O. for evidence of the alleged violation. According to B.O., Brumfield put his hands in B.O.'s pockets and touched his penis during the search. Brumfield and Ray, who was present, adamantly deny this allegation and say instead that Brumfield merely instructed B.O. to pull his pockets out to check their contents. In any event, nothing was found. The Brumfield and Ray also searched B.O.'s school bag and found various items, including a purse, expo-board cleaner, feminine looking OtterBox cases, and six calculators, three of which were school property. Although B.O. claimed that his math teacher authorized him to carry the calculators and that the purse belonged to his aunt, Brumfield wrote B.O. up for theft of school property. B.O. alleges that all of this occurred in the presence of Defendant Ricardo Montez Kincaid, a sergeant with the Byram Police Department.

Based on these events, S.O. filed this suit asserting claims under § 1983 for violating the Fourth, Thirteenth, and Fourteenth Amendments as well as various state-law causes of action. Defendants have since filed motions to dismiss based primarily on qualified immunity [57, 59]. Having both subject-matter and personal jurisdiction, the Court is ready to rule on these motions.

II.     Standards

   A.     Motions to Dismiss

Both sets of Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6). Under that rule, the Court must determine—based on the face of the complaint—whether Plaintiffs have stated a claim. *See* Fed. R. Civ. P. 12(d). But here, all parties submitted record evidence that is beyond Rule 12(b)(6)'s scope of review. When that happens, "Rule 12(d) gives a district court 'complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.'" *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 194 n.3 (5th Cir. 1988) (citation omitted). But if "matters

outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed. R. Civ. P. 12(d); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2011). In this case, the Court will exercise its discretion and consider the motions and supporting materials under Rule 56.

B.   Summary Judgment

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a

genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); Little, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

C. Qualified Immunity

Defendants assert qualified immunity. "The privilege is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001). As the Fifth Circuit recently summarized:

> [T]he doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. This immunity protects all but the plainly incompetent or those who knowingly violate the law. Accordingly, we do not deny immunity unless existing precedent must have placed the statutory or constitutional question beyond debate.

*Anderson v. Valdez*, 845 F.3d 580, 599-600 (5th Cir. 2016) (footnotes and citations omitted, punctuation altered). Furthermore, "[w]hen a defendant raises qualified immunity, the burden is on the plaintiff to 'demonstrate the inapplicability of the defense.'" *Coleman v. Marion Cty.*, No. 2:14-CV-185-DPJ-FKB, 2015 WL 5098524, at *6 (S.D. Miss. Aug. 31, 2015) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)).

Courts use a two-step analysis to determine whether qualified immunity applies. The traditional first step asks whether "the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier*, 533 U.S. at 201). Second, if a violation has been alleged, the Court must determine "whether [the officer's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* (alteration in original) (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)). In appropriate cases, courts can skip the

first step and ask whether the alleged violation violates clearly established law. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

Whether a law is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004) (citing *Saucier*, 533 U.S. at 201). Thus,

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id.* (citations omitted). "This does not require that 'the very action in question has previously been held unlawful,' merely that a reasonable officer would understand that his or her conduct was unlawful." *Weisler v. Jefferson Parish Sheriff's Office*, No. 17-30951, 2018 WL 3031437, at *2 (5th Cir. June 18, 2018) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

III. Analysis

Defendants' motions focus on Plaintiffs' federal claims under 42 U.S.C. § 1983. That statute "provides a claim against anyone who, under color of state law, deprives another of his or her constitutional rights." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994) (en banc) (quotation marks omitted). Here, Plaintiffs say Defendants violated their rights under the Fourth, Thirteenth, and Fourteenth Amendments to the United States Constitution. Defendants offer a number of arguments for dismissal.

A. District Defendants

1. Official-Capacity Claims

The District Defendants first assert that official-capacity suits are "in all respects other than name, to be treated as a suit against the entity." Defs.' Mem. [58] at 4 (citing *Ashe v.*

5

*Corley*, 992 F.2d 540 (5th Cir. 1993); *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). And because the school district has been sued, the claims should be dismissed. *Id.* (citing *Godby v. Montgomery Cty. Bd. of Educ.*, 996 F. Supp. 1390, 1403 (M.D. Ala. 1998)).

Plaintiffs do not *appear* to contradict this position with respect to *official*-capacity claims. Instead, they offer a few arguments for allowing the claims against the District Defendants in their *individual* capacities, which is not the issue. *See* Pls.' Mem. [64] at 4. That said, Plaintiffs offer conclusory statements that may signal their disagreement with Defendants' arguments. Plaintiffs say the District Defendants can be liable "for claims asserted against them in their individual and *professional* capacit[ies]." *Id.* at 1 (emphasis added); *see also id.* at 5. Section 1983 cases speak in terms of official- or individual-capacity claims, but even if Plaintiffs are using the term "professional" to mean "official," then they still fail to offer a substantive reason why the official-capacity claims survive. This part of the motion is therefore granted.

2. Fourth Amendment Claims

The parties contest whether B.O. suffered a Fourth Amendment violation when he was searched in Brumfield's Office. To begin, not all District Defendants were involved in the search. Neither Rankin nor Lundy was there. Accordingly, the claims against them must be viewed separately from those against Brumfield and Ray.

a. Rankin and Lundy

Rankin is the teacher who sent B.O. to the principal's office for allegedly selling candy. And Lundy is the school principal who recommended suspension after the disputed search. Although neither defendant was present during the search, Plaintiffs generally assert they knew

6

or should have known that their actions would lead to a Fourth Amendment violation. *See, e.g.*, Pls.' Resp. [64] at 11–12, 14, 17.

Rankin and Lundy are entitled to qualified immunity because neither had anything to do with the search. "The Supreme Court and [the Fifth Circuit] have long held that Fourth Amendment violations occur only through intentional conduct." *Watson v. Bryant*, 532 F. App'x 453, 457 (5th Cir. 2013). Plaintiffs' conclusory and speculative statements connecting Rankin and Lundy to a search that occurred outside their presence fail to show these defendants acted in an objectively unreasonable way with respect to that search. *See TIG Ins. Co.*, 276 F.3d at 759 (holding that conclusory allegations are not sufficient under Rule 56). The Fourth Amendment claims against these defendants related to the search are dismissed.[1]

          b.        Brumfield and Ray

The claims against Brumfield and Ray are different because those defendants allegedly participated in the search. According to B.O., Brumfield searched him in Ray's presence for evidence of illegal candy sales by "put[ting] his hands in [the child's] pockets touching [his] privacy." S.O. Aff. [63-1] at 13; *see also id.* (stating that Brumfield touched his "thang"). Brumfield and Ray flatly deny ever placing hands on B.O., but the Court must view the evidence in the light most favorable to the non-movant. And in that light, the Court must decide whether

---

[1] Plaintiffs offer a host of other accusations against Rankin and Lundy in their brief that seem to exceed the claims pleaded in their Amended Complaint. Ordinarily, a plaintiff may not assert new claims or theories in response to a dispositive motion. *See Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). But because the issues are not entirely clear, this ruling is limited to the Fourth Amendment search claim the District Defendants address in their motion.

7

searching a 12-year-old's genital area for evidence that he sold candy at school violates his Fourth Amendment rights.[2]

The Fourth Amendment protects students from unreasonable searches, but the scope of that protection is limited. In *Tinker v. Des Moines Independent Community School District*, the Supreme Court explicitly held that students do not "shed their constitutional rights . . . at the schoolhouse gate." 393 U.S. 503, 506 (1969). The Court recognized, however, that those rights are restricted to some extent because school officials must "prescribe and control conduct in the schools." *Id.* at 507.

The Supreme Court revisited those competing interests in *New Jersey v. T.L.O.*, where it held:

> We join the majority of courts that have examined this issue in concluding that the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the . . . action was justified at its inception," second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place[.]" Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the

---

[2] As the District Defendants correctly observe, the substance of these allegations are found in S.O.'s affidavit. Defs.' Rebuttal [67] at 1–2. Obviously, the Court may not consider hearsay under Rule 56, and Plaintiffs certainly complicated matters by putting the substance of the child's allegations in the mother's affidavit. That said, it is at least possible that these statements were excited utterances or present-sense impressions, issues neither party addresses. Moreover, B.O. confirmed the statements in his affidavit. *See* B.O. Aff. [63-1] at 10. Finally, there is evidence in S.O.'s affidavit that is based on first-hand knowledge—she claims that Brumfield essentially acknowledged the touching when S.O. confronted him. *See* S.O. Aff. [63-1] at 14. The Court will therefore consider the facts Plaintiffs assert.

> objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

469 U.S. 325, 341–42 (1985) (internal citations omitted).

Since *T.L.O.* was decided, it has become clearly established that searching bags or outerwear requires a lower level of suspicion than more intrusive searches. Most notably, in *Safford Unified School District Number 1 v. Redding*, school officials had a reasonable suspicion that the 13-year-old plaintiff was distributing prescription-strength ibuprofen and naproxen at school. 557 U.S. 364, 372–73 (2009). They therefore searched her bag and outerwear before subjecting her to what amounted to a near strip search, instructing her to "pull out her bra" and stretch the elastic on her underpants. *Id.* at 374.

The Court found that the initial search was proper but that the strip search violated the Fourth Amendment because "the content of the suspicion failed to match the degree of intrusion." *Id.* at 375. The Court then made an observation that speaks directly to the present case:

> mak[ing] it clear that the *T.L.O.* concern to limit a school search to reasonable scope requires the support of reasonable suspicion of danger or of resort to underwear for hiding evidence of wrongdoing before a search can reasonably make the quantum leap from outer clothes and backpacks to exposure of intimate parts. The meaning of such a search, and the degradation its subject may reasonably feel, place a search that intrusive in a category of its own demanding its own specific suspicions.

*Id.* at 377 (emphasis added) (internal citations omitted).

In the present case, the Court believes reasonable suspicion existed to search B.O. But if things happened the way B.O. says, then the excessively intrusive nature of the search was objectively unreasonable in light of *Redding*. Indeed, the facts here are even worse. *Redding* involved the suspected distribution of drugs, whereas B.O. supposedly sold bite-sized candy. The *Redding* plaintiff was 13 years old, B.O. was 12. And while the *Redding* plaintiff was strip

searched, she was never touched; B.O. says Brumfield touched his penis as part of the search. As in *Redding*, "the content of the suspicion failed to match the degree of intrusion." *Id.* at 375.

For these reasons, the Court finds that if B.O. is factually correct, then the search was objectively unreasonable in light of clearly established law. Whether B.O. is correct must be decided by the jury. *See Snyder v. Trepagnier*, 142 F.3d 791, 800 (5th Cir. 1998).

3. Thirteenth Amendment Claim

S.O. says Ray violated B.O.'s Thirteenth Amendment right to be free from involuntary servitude when Ray told B.O. to retrieve the candy he had hidden in the trashcan. *See* Am. Compl. [3] at 10–11. This claim is clearly frivolous.

The Supreme Court addressed the scope of the Thirteenth Amendment in *United States v. Kozminski*:

> The Thirteenth Amendment declares that "[n]either slavery nor involuntary servitude, . . . shall exist within the United States, or any place subject to their jurisdiction." . . . The primary purpose of the Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase "involuntary servitude" was intended to extend "to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." *Butler v. Perry*, 240 U.S. 328, 332, 36 S. Ct. 258, 259, 60 L. Ed. 672 (1916). *See also Robertson v. Baldwin*, 165 U.S. 275, 282, 17 S. Ct. 326, 329, 41 L. Ed. 715 (1897); *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 69, 21 L. Ed. 394 (1873).
>
> While the general spirit of the phrase "involuntary servitude" is easily comprehended, the exact range of conditions it prohibits is harder to define. The express exception of involuntary servitude imposed as a punishment for crime provides some guidance. The fact that the drafters felt it necessary to exclude this situation indicates that they thought involuntary servitude includes at least situations in which the victim is compelled to work by law. Moreover, from the general intent to prohibit conditions "akin to African slavery," *see Butler v. Perry*, *supra*, 240 U.S.[] at 332–333, 36 S. Ct.[] at 259, as well as the fact that the Thirteenth Amendment extends beyond state action, *compare* U.S. Const., Amdt. 14, § 1, we readily can deduce an intent to prohibit compulsion through physical coercion.

487 U.S. 931, 942 (1988).

Here, B.O. was not subjected to "compulsory labor akin to African slavery." *Id.* And Plaintiffs have otherwise failed to show that Ray's actions were objectively unreasonable. The Court dismisses the Thirteenth Amendment claim against Ray.[3]

    4.   Fourteenth Amendment Claim

The District Defendants say Plaintiffs have failed to plead a cognizable Fourteenth Amendment due-process claim. They infer two possible theories from the Amended Complaint: (1) that the search violated due process because S.O. was not present and did not consent, and (2) that the disciplinary proceedings against B.O. violated due process. *See* Defs.' Mem. [58] at 10–11. Only the first is readily apparent in Count Three of the Amended Complaint [3].

Plaintiffs never address these arguments in their response and never mention "due process" or the Fourteenth Amendment. *See generally* Pls.' Mem. [64]. Accordingly, the Court finds Plaintiffs waived these grounds for relief. *See Pratt v. Mut. of Omaha Ins. Co.*, No. 4:15-CV-09-DMB-JMV, 2016 WL 1248885, at *8 (N.D. Miss. Mar. 28, 2016) ("The failure to raise an argument in response to a motion to dismiss operates as a waiver of such argument." (citing *Jaso v. The Coca Cola Co.*, 435 F. App'x. 346, 358 n.12 (5th Cir. 2011))). In any event, Plaintiffs have not attempted to show that any of the individual defendants violated clearly established due-process law.[4]

---

[3] Plaintiffs have not shown that the other District Defendants had anything to do with this incident, so for that additional reason, any Thirteenth Amendment claims against Brumfield, Lundy, or Rankin are dismissed.

[4] As with other claims, it is not apparent how each individual District Defendant would be responsible for the alleged due-process violations. The claims against the defendants who were not involved in the due-process allegations can be dismissed for this additional reason.

11

B.  Byram Defendants

According to the Byram Police Department, both it and Kincaid are entitled to qualified immunity because Kincaid acted reasonably. *See* Defs.' Mot. [59] at 1. This raises two threshold issues neither party addresses. First, it is not apparent that the Byram Police Department—as opposed to the City of Byram—is a proper defendant under § 1983. *See Bradley ex rel. Wrongful Death Beneficiaries of Bradley v. City of Jackson*, No. 3:08-CV-261-TSL-JCS, 2008 WL 2381517, at *2 (S.D. Miss. June 5, 2008) (holding that Jackson Police Department was not a proper defendant under § 1983). But the Byram Defendants do not assert this argument, so it will not form the sole basis for the opinion. Second, if the Department is a proper party, the Court is not convinced that it can assert qualified immunity. Qualified immunity is a defense for individual defendants, not municipalities. *See Owen v. City of Indep., Mo.*, 445 U.S. 622, 638 (1980). Accordingly, this order focuses on Kincaid's right to qualified immunity and will separately note the arguments that affect the Department.

1.  Fourth Amendment Claim

In the Amended Complaint, Plaintiffs say Kincaid "watched, observed, looked upon and intimidated minor B.O. as he was being inappropriately touched in his penis area." Am. Compl. [3] ¶ 23. They then say "upon belief and understanding, officer Kincaid saw the twelve year old minor being violated and did nothing." *Id.* ¶ 24. In other words, Kincaid violated B.O.'s Fourth Amendment rights by failing to intervene and stop the illegal search. *See id.* at ¶ 36.

The Byram Defendants generally contend that these averments fail to state a plausible claim under *Iqbal*/*Twombly* and otherwise fail to allege sufficient facts to overcome qualified immunity. They may have a point. But as stated above, both sides submitted record evidence, and the Court has elected to consider it. That means Plaintiffs must now go beyond the

12

pleadings and point to specific record evidence to establish their claim. *See Celotex Corp.*, 477 U.S. at 324. Under that standard, Plaintiffs have failed to support their Fourth Amendment claims against the Byram Defendants.

Plaintiffs' Fourth Amendment theory against the Byram Defendants depends on proof that Kincaid was actually present during the search. Yet Plaintiffs offer no credible record evidence to prove their otherwise conclusory assertion that he was there. For example, Plaintiffs rely on statements found in the Byram Defendants' own memorandum, arguing:

> Defendant Kincaid, came into the office and questioned B.O. as admitted by Defendant Kincaid in [Doc. 60, page 2 Paragraph 2, (stating: in fact, Sgt. Kincaid simple happened to walk back to the assistant principal's office while the school's investigation was ongoing) regarding purportedly stolen (2) hand held used calculators that are pictured in this memorandum as (Exhibit C).

Pls.' Mem. [66] at 2. True enough, the Byram Defendants state in their memorandum that Kincaid walked into the office during the investigation. Defs.' Mem. [60] at 3. But Plaintiffs omit the very next sentence, where defendants say that by then the search "was already over." *Id.* Defendants have not admitted Kincaid's presence during the search.

Plaintiffs next say that Defendant Ray "contradicts Defendant Kincaid's testimony when she swore the following: 'Officer Kincaid *was not present at* the time of the search. I never witnessed Officer Kincaid make physical contact with B.O.'" Pls' Mem. [66] at 2–3 (citing Ray Aff. [57-2] at 3) (emphasis in Plaintiffs' memorandum). They also argue that Ray contradicts herself when she says Kincaid was not present during the search yet claims she never saw him make "physical contact" with B.O. *Id.* Obviously, none of these statements are in conflict. Kincaid says in the portion of his brief that Plaintiffs rely upon that he arrived after the search but that he participated in the questioning. Ray—who was in the room—says the same thing in

13

her affidavit, *see* Ray Aff. [57-2], as does Kincaid in his subsequently submitted affidavit, *see* Kincaid Aff. [68-1].

Finally, neither affidavit that B.O. and S.O. submitted in response to this motion says Kincaid was present, and Plaintiffs have otherwise failed to cite any record evidence showing that he was. Absent that factual predicate, Plaintiffs have not shown that Kincaid violated B.O.'s constitutional rights with respect to the search. The Byram Defendants' motion is therefore granted as to the Fourth Amendment claim related to the search.

2. Fourteenth Amendment Claim

The Byram Defendants also seek dismissal of S.O.'s Fourteenth Amendment claim based on Kincaid's alleged failure to read B.O. his *Miranda* rights before he questioned him. *See* Pls.' Resp. [66] at 4; *see also Miranda v. Arizona*, 384 U.S. 436 (1966). Kincaid says this claim must be dismissed as a matter of law because B.O. was not formally arrested and was not otherwise entitled to *Miranda* warnings. Defs.' Mem. [60] at 14.

There is a threshold problem with this claim. "Violations of the prophylactic *Miranda* procedures do not amount to violations of the Constitution itself and, as such, fail to raise a cause of action under § 1983." *Foster v. Carroll Cty.*, 502 F. App'x 356, 358 (5th Cir. 2012) (citing *Chavez v. Martinez*, 538 U.S. 760, 772 (2003)); *see also Rollerson v. City of Freeport, Tex.*, No. H-12-1790, 2013 WL 2189892, at *14 (S.D. Tex. May 16, 2013) (collecting cases holding that remedy for *Miranda* violation is exclusion from evidence of any compelled self-incrimination, not a § 1983 action), *aff'd*, 555 F. App'x 404 (5th Cir. 2014). In this case, it is undisputed that no criminal charges were brought against B.O. And "the absence of a 'criminal case' in which [B.O.] was compelled to be a 'witness' against himself defeats his core" claim. *Chavez*, 538 U.S. at 772–73.

14

Aside from that, Plaintiffs have not shown that Kincaid violated clearly established law when he questioned B.O. about the contents of his backpack without administering *Miranda* warnings. Numerous courts have held that "[u]nder the federal constitution, students facing disciplinary action in public schools are not entitled to *Miranda* warnings." *Jarmon v. Batory*, No. 94-0284, 1994 WL 313063, at *11 (E.D. Pa. 1994); *see also K.A. ex rel. J.A. v. Abington Heights Sch. Dist.*, 28 F. Supp. 3d 356, 366 (M.D. Pa. 2014) (collecting cases); *Brian A. ex rel. Arthur A. v. Stroudsburg Area Sch. Dist.*, 141 F. Supp. 2d 502, 511 (M.D. Pa. 2001). And courts have reached that same conclusion even when the questioning occurs in the presence of law enforcement. *See, e.g.*, *DeCossas v. St. Tammany Par. Sch. Bd.*, No. 16-3786, 2017 WL 3971248, at *21 (E.D. La. Sept. 8, 2017) (granting summary judgment).

Plaintiffs' only authority on this point is no different. In *N.C. v. Commonwealth of Kentucky*, the Kentucky Supreme Court considered whether to suppress a confession the plaintiff made during in-school questioning by an assistant principal and a school resource officer. 396 S.W.3d 852, 853–54 (Ky. 2013). A divided court concluded that when "questioning is done in the presence of law enforcement, *for the additional purpose of obtaining evidence against the student to use in placing a criminal charge*, the student's personal rights must be recognized." *Id.* at 864 (emphasis added). The evidence was therefore suppressed in the criminal trial. But the court also noted that not "[e]very custodial interrogation, when law enforcement is involved will . . . necessarily invoke the giving of *Miranda* warnings." *Id.* at 865; *see also id.* at 853 (recognizing that "questioning by school officials . . . are not impacted by *Miranda* when only school discipline is involved").

*N.C.* arose in the context of a criminal suppression hearing. It does not demonstrate that B.O. had a clearly established right to *Miranda* warnings in this context, and Plaintiffs offer no

15

additional authority on this point. Accordingly, Kincaid is entitled to qualified immunity on the Fourteenth Amendment due-process claim.[5]

VI.     Conclusion

The Court has considered all the parties' arguments. Those not specifically addressed do not change the outcome. For the foregoing reasons, the Court denies the District Defendants' Motion to Dismiss [57] as to S.O.'s Fourth Amendment claim against Brumfield and Ray in their individual capacities. Defendants' motions [57, 59] are otherwise granted.

**SO ORDERED AND ADJUDGED** this the 3rd day of July, 2018.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] As stated, the Byram Police Department is not entitled to qualified immunity. But failing to give *Miranda* warnings does not create liability under § 1983 in this context. Moreover, the Department briefly argues that Plaintiffs failed to establish a policy or custom that was the "moving force" behind the constitutional deprivation. *See* Defs.' Mem. [60] at 16 (quoting *Bankston v. Pass Rd. Tire Ctr., Inc.*, 611 So. 2d 998, 1008–09 (Miss. 1992)). This argument speaks to municipal liability, *see Piotrowski v. City of Hous.*, 237 F.3d 567, 580 (5th Cir. 2001), and Plaintiffs did not address it. The claim is therefore dismissed as to this defendant as well.

16