UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

S.O., INDIVIDUALLY AND ON BEHALF
OF HER MINOR SON, B.O.                                                              PLAINTIFFS

V.                                                              CIVIL ACTION NO. 3:17-CV-383-DPJ-FKB

HINDS COUNTY SCHOOL DISTRICT, ET                                                    DEFENDANTS
AL.

ORDER

Plaintiffs say that Assistant Principal Tommy Brumfield inappropriately touched B.O., a minor, while searching his pockets. They therefore sued Defendants under 42 U.S.C. § 1983. There are five pending motions. For the following reasons, Defendants Tommy Brumfield and Michelle Ray's second motion to dismiss based on qualified immunity [117] is granted; Defendants Brumfield, Hinds County School District ("HCSD"), and Ray's summary-judgment motion [119] is granted; Defendant Brumfield's motion to dismiss Plaintiffs' proposed amendment or alternatively, motion for summary judgment [121] is denied; Defendants Brumfield, HCSD, and Ray's motion to strike Plaintiffs' expert [123] is granted; and Defendants Brumfield and Ray's motion to strike Plaintiffs' sur-rebuttal [141] is granted.

I.    Background

The parties dispute the reasonableness of a search Defendant Brumfield allegedly performed on Plaintiff B.O., a seventh-grade student suspected of selling candy during school. The Court previously denied a motion to dismiss, holding that based on Plaintiffs' affidavits—viewed in the light most favorable to them—Brumfield reached in the child's pocket and "touched [B.O.'s] penis as part of the search." July 3, 2018 Order [70] at 10 (denying qualified immunity). Subsequent discovery established that Brumfield never touched B.O.'s penis, so Defendants again assert qualified immunity and now seek summary judgment on Plaintiffs'

Fourth Amendment unreasonable-search claim.  The Court has considered all briefs and relevant law and is now ready to rule on the two dispositive motions as well as the collateral motions to strike.

II.     Dispositive Motions

There are two dispositive motions, one for dismissal and one for summary judgment. Both will be addressed under Rule 56.  Motions to dismiss filed after a defendant answers the complaint typically fall under Federal Rule of Civil Procedure 12(c).  In this case, Defendants did not cite the applicable rule of procedure, but Plaintiffs construed the motion as a motion for summary judgment and based their response on evidence outside the record.  *See* Pls.' Mem. [133] at 4.  The Court will therefore convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *see also Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007) ("It is well known that when 'matters outside the pleading' are presented with a motion to dismiss under Rule 12(b)(6), a district court has complete discretion to either accept or exclude the evidence." (citation omitted)).

Summary judgment is warranted under Rule 56(a) when evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

A. Defendants' Motion to Dismiss

Defendants Brumfield and Ray assert qualified immunity. "The privilege is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) (internal quotation marks and citations omitted). As the Fifth Circuit has summarized:

> [T]he doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. This immunity protects all but the plainly incompetent or those who knowingly violate the law. Accordingly, we do not deny immunity unless existing precedent must have placed the statutory or constitutional question beyond debate.

*Anderson v. Valdez*, 845 F.3d 580, 599–600 (5th Cir. 2016) (footnotes and citations omitted, punctuation altered). Furthermore, "[w]hen a defendant raises qualified immunity, the burden is

on the plaintiff to 'demonstrate the inapplicability of the defense.'" *Coleman v. Marion Cty.*, No. 2:14-CV-185-DPJ-FKB, 2015 WL 5098524, at *6 (S.D. Miss. Aug. 31, 2015) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)).

Courts use a two-step analysis to determine whether qualified immunity applies. The traditional first step asks whether "the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier*, 533 U.S. at 201). Second, if a violation has been sufficiently alleged, the Court must determine "whether [the officer's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Id.* (alteration in original) (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)). In appropriate cases, such as here, courts can skip the first step and ask whether the alleged conduct violates clearly established law. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

The inquiry whether a law is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004) (quoting *Saucier*, 533 U.S. at 201). Thus,

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id.* (citations omitted). "This does not require that 'the very action in question has previously been held unlawful,' merely that a reasonable officer would understand that his or her conduct was unlawful." *Weisler v. Jefferson Parish Sheriff's Office*, No. 17-30951, 2018 WL 3031437, at *2 (5th Cir. June 18, 2018) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

This is not the first time that Brumfield and Ray have moved for dismissal based on qualified immunity.  As noted above, the Court denied Defendants' first motion on July 3, 2018.  There, the Court applied Rule 12(d) and held that a question of fact precluded summary judgment.  July 3, 2018 Order [70] at 10.  In previous affidavits, B.O. and his mother had sworn that Brumfield touched his "thang" while searching his pockets for money from the alleged sale of candy during school.  *See* S.O. Aff. [63-1] at 13; B.O. Aff. [63-1] at 10.  The Court viewed those sworn statements in the light most favorable to Plaintiffs and concluded "that if B.O. is factually correct [that Brumfield touched his penis], then the search was objectively unreasonable in light of clearly established law."  July 3, 2018 Order [70] at 10; *see also id.* at 9 (citing *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 372–73 (2009)).

But Plaintiffs' sworn affidavits withered as discovery progressed.  Although they assert that their positions have remained consistent, it is now clear that Brumfield never touched B.O.'s penis as the affidavits suggested—the salient fact supporting the Court's initial ruling.  *See* B.O. Dep. [117-8] at 5 ("Q:  Did he actually touch your penis" "A:  No, ma'am, he didn't grab it, but he touched near the vicinity."); *see also* S.O. Dep. [117-9] at 5–6 ("Q:  Okay.  And so at any point – and I understand what you're telling me as far as what B. said, but at any point, did B. actually say that Mr. Brumfield touched his penis?  A:  Touched?  Q:  Yes, ma'am.  A:  No.  [B.O.] said that Mr. Brumfield had his hands in his pockets feeling around his private area, and it made him very uncomfortable, and he did not like it."); S.O. June 10, 2019 Affidavit [132-14] ¶ 6 ("B.O., my son, being a minor contends that he has always, since a child, called his penis areas 'my thang,' and when B.O. speaks of his thang he is talking about the pubic area that is connected to his thigh . . . .").

Brumfield has steadfastly denied ever touching B.O. at all, claiming that he merely asked the student to pull out his pockets for inspection. *See* Brumfield Aff. [57-3] at 3. But viewing the evidence in the light most favorable to the non-movants, the Court must decide whether they have shown that searching a student's pockets under these circumstances—without touching his genitalia—violates clearly established law.

The only case Plaintiffs cite as establishing clearly established law is *Safford Unified School District No. 1 v. Redding*. Pls.' Mem. [133] at 16. But in that case, the school searched a 13-year old's bag for suspected drugs and then subjected her to a near strip search, instructing her to "pull out her bra" and stretch the elastic on her underpants. 557 U.S. at 374. Nothing remotely similar has been alleged in this case, and as the United States Supreme Court held in *Mullenix v. Luna*:

> We have repeatedly told courts . . . not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.

136 S. Ct. 305, 308 (2015) (citation and punctuation omitted).

*Redding* is distinguishable, and Plaintiffs fail to cite any other cases addressing a Fourth Amendment claim under similar facts. Defendants, on the other hand, cite at least one case where a district court found no constitutional violation when school officials reached in students' pockets searching for money. *See H.Y. ex rel. K.Y. v. Russell Cty. Bd. of Educ.*, 490 F. Supp. 2d

6

1174, 1186 (M.D. Ala. 2007) (holding that "these searches did not violate the Fourth Amendment"). Brumfield and Ray are entitled to qualified immunity.[1]

      B.      Defendants' Summary-Judgment Motion

Having granted qualified immunity to Brumfield and Ray on Plaintiffs' individual-capacity Fourth Amendment claims, the Court turns to the official-capacity claims against those Defendants and the municipal-liability claim against HCSD. Defendants first say no Fourth Amendment violation occurred during the search, but they also say that even if one did, Plaintiffs "have not shown an official policy or custom caused the deprivation." Defs. Brumfield, HCSD, and Ray Mem. [120] at 11. Because the Court agrees that municipal liability is lacking, it is unnecessary to determine whether a Fourth Amendment violation occurred.

As an initial point, the official-capacity claims against Brumfield and Ray are treated as claims against the municipality itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1990). Thus, the analysis for those claims mirrors the § 1983 analysis for the claim against HCSD.

Section 1983 precludes deprivation of a right "secured by the Constitution and the laws" of the United States by a person acting under color of state law. 42 U.S.C. § 1983; *Daniel v. Ferguson*, 839 F.2d 1124, 1128 (5th Cir. 1988). A municipality may be held liable as a "person" under § 1983, but that liability may not rest on *respondeat superior* and instead must be

---

[1] Plaintiffs offer a few other arguments for denying summary judgment. For example, they try to assert judicial estoppel. *See* Pls.' Resp. [132] at 3. But as their own response acknowledges, judicial estoppel does not apply unless the Court accepts the party's prior inconsistent position. *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999) (listing elements of judicial estoppel). That did not occur here because Defendants' position has not changed and the Court rejected their first motion. Plaintiffs also argue various non-material factual issues. But "only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. Factual disputes that are irrelevant or that are unnecessary will not be counted." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987) (citation omitted). None of Plaintiffs' arguments overcome the failure to prove Defendants violated clearly established law.

premised upon "'some official action or imprimatur.'" *Valle v. City of Hous.*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).

To establish § 1983 liability against a municipality, "[a] plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.'" *Id.* at 541–42 (quoting *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002)). Plaintiffs fail to meet any of these elements.

Plaintiffs attempt to satisfy the first element by pointing to an official policy. A plaintiff may illustrate official policy by "point[ing] to a policy statement formally announced by an official policymaker." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010) (citing *Webster v. City of Hous.*, 735 F.3d 838, 841 (5th Cir. 1984) (en banc)). Alternatively, a plaintiff may point to a "'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id.* at 169 (quoting *Webster*, 735 F.3d at 841).

Here, Plaintiffs travel under the first option, claiming that Defendants violated HCSD's own policy regarding student searches. Pls.' Mem. [129] ¶ 4. That policy states: "At least two adults must be present while any search is conducted. If, in the discretion of the administrator or employee conducting the search, the search is particularly intrusive, the person conducting the search and the witness should be the same sex as the student." Policy [119-7].

Assuming the policy was violated as Plaintiffs say—which is not evident—violating a municipal policy does not equate to a constitutional violation. *Harris v. Payne*, 254 F. App'x 410, 417 (5th Cir. 2007) ("That Zugg and Waldrop also violated internal policies does not

8

transform Harris's claim into one of constitutional dimension."). More significantly, Plaintiffs must show that the policy itself "cause[d] an employee to violate another's constitutional rights." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 751 (1989) (citation and internal quotation marks omitted). Violating a policy does not establish that the policy caused the deprivation of a right. *See Williams v. City of Cleveland*, No. 2:10-CV-215–SA–JMV, 2012 WL 3614418, at *17 (N.D. Miss. Aug. 21, 2012) (holding that employee's violation of municipal policy creates no liability for municipality under § 1983). Imposing municipal liability because an employee violated policy on one occasion would amount to *respondeat superior* liability, which is not permitted under § 1983. *Id.*

Plaintiffs likewise fail to identify a custom or policymaker. *See Valle*, 613 F.3d at 541–42. They could have attempted to show a custom in two ways: (1) a single act of unconstitutional conduct by a policymaker or (2) a pattern of constitutional violations by municipal employees. *Zarnow*, 614 F.3d at 169. Plaintiffs offer no such evidence. As for identifying a policymaker, the Fifth Circuit held in *Piotrowski* that "[t]his is not an opaque requirement . . . . Actual or constructive knowledge of a custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." 237 F.3d at 579 (quoting *Webster*, 735 F.2d at 842). Again, Plaintiffs offer no summary-judgment evidence to satisfy this element. Thus, Plaintiffs have not established official-capacity claims against Defendants Brumfield and Ray and failed to demonstrate a basis for municipal liability against HCSD. Plaintiffs' Fourth Amendment claim fails as a matter of law.

III.   Collateral Issues

    A.   Defendants' Motion to Strike Plaintiffs' Expert

Defendants Brumfield, HCSD, and Ray ask the Court to strike Plaintiffs' expert, Kim Basinger. Defs. Brumfield, HCSD, and Ray Mot. [123]. The moving Defendants say that if their motions as to the Fourth Amendment claim are granted, then the expert's "opinions will be irrelevant." Defs. Brumfield, HCSD, and Ray Mem. [124] at 3. The Court agrees. Plaintiffs' expert's conclusions relate solely to Plaintiffs' alleged damages based on their Fourth Amendment claim. That claim has been dismissed, so the motion to strike is granted.

    B.   Defendants' Motion to Strike Plaintiffs' Sur-Rebuttal

On June 26, 2019, Defendants filed a rebuttal in support of their second qualified-immunity-based motion to dismiss. *See* Defs.' Rebuttal [139]. Believing that Defendants' brief was actually a delinquent sur-rebuttal filed without leave of court, Plaintiffs filed their own sur-rebuttal—without leave of court—which seemingly asks the Court to strike Defendants' submission. *See* Pls.' Sur-Rebuttal [140]. Defendants responded with a motion to strike Plaintiffs' sur-rebuttal. *See* Defs.' Mot. [141]. Defendants' motion is granted on procedural and substantive grounds.

Procedurally, neither the Federal Rules of Civil Procedure nor this Court's local rules provide parties the right to file a sur-rebuttal. So—as Plaintiffs themselves observe—"a [s]ur-[r]ebuttal requires the Court's leave." Pls.' Sur-Rebuttal [140] at 2. Yet Plaintiffs failed to seek leave before filing their sur-rebuttal. In addition, Plaintiffs' sur-rebuttal is in effect a motion to strike Defendants' rebuttal memorandum. But under Uniform Local Rule 7(b)(3)(C), "[a] response to a motion may not include a counter-motion in the same document. Any motion must

10

be an item docketed separately from a response." In other words, if Plaintiffs wanted the Court to strike Defendants' rebuttal, they should have filed a separate motion—as Defendants did.

Substantively, Plaintiffs' arguments for striking Defendants' rebuttal mischaracterize the record. As stated, Plaintiffs say the rebuttal filed by Defendants Brumfield and Ray is, in reality, an untimely sur-rebuttal filed without leave of court. Pls.' Sur-rebuttal [140] ¶¶ 1–2. Not so. When discovery proved that Plaintiffs' accounts no longer supported the Court's initial ruling, Brumfield and Ray filed a second qualified-immunity-based motion on June 4, 2019. Plaintiffs responded in opposition on June 13, 2019. Then, Brumfield and Ray moved for an extension of time "until June 27, 2019" to file their rebuttal. Defs.' Mot. [134]. Although Plaintiffs opposed that motion, the Court granted it in a June 19, 2019 text-only order. Thus, Defendants had until June 27, 2019, to file their rebuttal, and they did so one day early. *See* Defs.' Rebuttal [139]. The rebuttal was neither untimely nor an unauthorized sur-rebuttal. Brumfield and Ray's motion to strike Plaintiffs' sur-rebuttal is granted.[2]

C.   State-Law Claims and Supplemental Jurisdiction

Having dismissed the federal claims, the only remaining question is whether there are any state-law claims, and if so, whether the Court should exercise supplemental jurisdiction over them under 28 U.S.C. § 1367.

To begin, Defendant Brumfield asks the Court to dismiss Plaintiffs' *proposed* second amended complaint under Rule 12(b)(6), or alternatively under Rule 56. Brumfield Mot. [121]. On October 25, 2018, Plaintiffs sought leave to add an assault claim against Brumfield in a

---

[2] Plaintiffs badly misconstrue the Court's text order granting Defendants' requested extension. They argue that the order merely gave Defendants "until the end of the day to file his [sic] rebuttal." Pls.' Resp. [142] at 2. But the text order clearly states that the Court was granting Defendants' motion for time, which expressly sought a June 27, 2019 deadline.

second amended complaint. Pls.' Mot. [83]. The Court granted the motion on April 12, 2019. Order [116]. Accordingly, under the Court's local rules, Plaintiffs had "seven (7) days from entry of the order granting the motion" to "file the amended pleading as a separately docketed item." L.U. Civ. R. 7(b)(2). They never did. Brumfield now seeks dismissal of the never-filed pleading. *See* Brumfield Mot. [121].

In the body of their response to Brumfield's motion, Plaintiffs ask the Court to allow more time to file the second amended complaint based on excusable neglect. But this delinquent request for more time was made in a responsive pleading rather than by motion. It therefore violates the Court's local rules. *See* L.U. Civ. R. 7(b)(3)(C) ("A response to a motion may not include a counter-motion in the same document. Any motion must be an item docketed separately from a response."). Substantively, the amendment, discovery, and dispositive-motions deadlines have long since passed. So even if there was a proper motion, prejudice would exist, and the motion would be denied.

In short, there is no second amended complaint for the Court to address under either Rule 12(b)(6) or 56. Nor is there a motion before the Court seeking leave to file the proposed second amended complaint. As such, Brumfield's motion is denied to the extent it seeks judgment because there is nothing to dismiss.

That said, there may be one state-law claim that has never been dismissed. Although the Court granted summary judgment as to most state-law claims, it denied—without prejudice— Defendant Ben Lundy's motion as it related to his individual-capacity claims. *See* Oct. 18, 2017 Order [53] at 5. It does not appear that Lundy joined in the latest motions, but to the extent this claim remains, the Court declines supplemental jurisdiction.

Title 28 U.S.C. § 1367(c)(3) states, "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state law claim once all federal claims are dismissed." *Heggemeier v. Caldwell Cty.*, 826 F.3d 861, 872 (5th Cir. 2016) (quoting *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993)). The Fifth Circuit has "elucidated the general rule that 'a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial.'" *Id.* (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009)). That is the case here. So to the extent the remaining state-law claim against Defendant Lundy has not previously been dismissed, it is dismissed without prejudice.

IV.   Conclusion

The Court has considered all arguments raised; those not addressed would not change the outcome. For the reasons stated, Defendants Brumfield and Ray's second motion to dismiss based on qualified immunity [117] is granted; Defendants Brumfield, HCSD, and Ray's summary-judgment motion [119] is granted; Defendant Brumfield's motion to dismiss Plaintiffs' proposed amendment or alternatively, motion for summary judgment [121] is denied; Defendants Brumfield, HCSD, and Ray's motion to strike Plaintiffs' expert [123] is granted; and Defendants Brumfield and Ray's motion to strike Plaintiffs' sur-rebuttal [141] is granted. Any remaining state-law claims against Defendant Lundy are dismissed without prejudice. A separate judgment will be prepared under Rule 58.

**SO ORDERED AND ADJUDGED** this the 30th day of August, 2019.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE